UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

FREEMAN CARL REED,
    a/k/a "Buck," and
GARY EDWARD DEGLER,                   **INDICTMENT**

       Defendants.
_____/

The Grand Jury charges:

### Introduction

1.    Defendant FREEMAN CARL REED at all times relevant to this indictment resided in St. Joseph, Michigan. REED was a self-proclaimed millionaire who sold various multi-level marketing products, and offered training to others on his methods to sell those products.

2.    Defendant GARY EDWARD DEGLER at all times relevant to this indictment resided in the Philippines. DEGLER is a citizen of the United States and claims to be a successful businessman.

### The Scheme to Defraud

3.    Starting in or about the fall of 2007, REED and DEGLER knowingly and with the intent to defraud, devised and executed a scheme to sell bogus gold investments to investors. REED and DEGLER made representations about the nature of the investments knowing that those representations were false. Further, REED and DEGLER did not invest the investors'

money as promised, and instead used the majority of the money raised for their own personal use and enjoyment.

**Means and Methods**

4.      It was part of the scheme to defraud that REED and DEGLER obtained money by pitching investors to invest into two gold scams. REED and DEGLER initially told investors that they had access to, and control of, a secret dig site in a mountain in the Philippines that contained gold bars left by the Japanese Military during World War II. REED and DEGLER represented to investors that they had a map that would lead them to the gold bars. REED and DEGLER represented to investors that they needed money for equipment and laborers to recover the gold bars from the mountain.

5.      It was further part of the scheme to defraud that REED and DEGLER told existing investors and new investors that they had access to gold certificates obtained from Ferdinand Marcos, former dictator of the Philippines. REED and DEGLER told investors that Marcos gave the certificates to a man named "the Commodore," who was Marcos' cousin and/or confidant. According to REED and DEGLER, the Commodore needed money and also REED and DEGLER's help to redeem the certificates. The certificates could be redeemed only in Switzerland, and were purportedly worth billions of dollars.

6.      It was further part of the scheme to defraud that REED and DEGLER told investors that the gold recovery venture and the gold certificates were exclusive investment opportunities offered only to a limited number of investors.

7.      It was further part of the scheme to defraud that REED and DEGLER represented to investors that the gold recovery venture and gold certificates would return billions in profits. Investors were promised that they could expect to make between three and ten times the value of

their investment within months of their investment. REED and DEGLER told investors that their investment was guaranteed.

8. It was further part of the scheme to defraud that REED and DEGLER represented to investors that they had invested hundreds of thousands of dollars of their own funds into the gold recovery venture and gold certificates, when they had not.

9. It was further part of the scheme to defraud that REED and DEGLER showed curious investors a worksite in the Philippines where the gold bars were supposedly buried. REED and DEGLER told investors that they had exclusive access to the site and owned or controlled the property where the site was located. At the site, REED and DEGLER hired Philippine men and boys to dig into the ground. REED and DEGLER also took video and pictures of the site to show investors.

10. It was further part of the scheme to defraud that investors invested approximately $1,300,000 in the gold recovery venture and gold certificates schemes to defraud. None of the investors received any profit or return on their investment.

11. It was further part of the scheme to defraud that REED and DEGLER did not use the investors' funds as promised, and instead used the vast majority of investor funds for personal expenditures, including the purchase of a house, mortgage payments, home renovations, vehicles, personal vacations and spending cash. To the extent REED and DEGLER spent any money on the gold recovery venture or gold certificates, that money was expended primarily to further the appearance that they actually had legitimate business ventures, when they did not.

12. It was further part of the scheme to defraud that REED and DEGLER knew or acted in deliberate ignorance of the fact that the gold recovery venture and gold certificates were illegitimate investments which were complete scams and/or stood no chance of returning a profit.

13. It was further part of the scheme to defraud that to assuage investors, REED and DEGLER repeatedly told them they were very close to finding the gold bars and/or redeeming the certificates. Defendants did so to lull the investors into believing that a profitable return was imminent and that they should not alert authorities. Defendants made those representations knowing that the gold recovery venture and gold certificates were worthless investments.

14. It was further part of the scheme to defraud that REED and DEGLER intentionally misled investors to believe that even if the gold recovery venture was unsuccessful and the gold certificates were not redeemed, they would get their money back from other, more profitable, ventures on which they were working. None of those purported investments produced any profit and were just stories designed to keep investors from reporting them to law enforcement.

## COUNTS 1-5
## (Wire Fraud)

15. The Grand Jury incorporates into Counts 1-5, specifically and by reference and as if stated therein, the allegations and assertions stated in paragraphs 1-14.

From in or about the fall of 2007, until in or about April 2012, in the Southern Division of the Western District of Michigan,

> FREEMAN CARL REED,
> a/k/a "Buck," and
> GARY EDWARD DEGLER

did knowingly and unlawfully devise a scheme and artifice to defraud and to obtain money and property from investors by means of false and fraudulent pretenses and representations. For the purpose of executing the scheme and artifice, Defendants transmitted or caused to be transmitted certain writings, signs, signals and sounds in interstate commerce by means of a wire communication. Specifically, Defendants made or caused to be made the following wire transfers and text messages, which traveled in and among interstate commerce:

| Count | Date | Wire Transfers and Text Messages |
|---|---|---|
| 1 | 7/31/08 | REED transfers $56,000 from his Bank of America Account # xxxxx-x6179 to REED's JP Morgan Joint Bank Account # 686282997 |
| 2 | 8/6/2008 | REED and DEGLER induce investor Mike Alstott to wire $250,000 from Greenback Enterprises Incorporated Branch Banking and Trust Account #xxxxx1121 to REED's JP Morgan MVP Retreats Account #xxxxx9375. |
| 3 | 7/27/09 | REED sends text message to investor Mark Consigny reassuring him that "Everything Great and on track" with the investment. |
| 4 | 9/11/09 | REED sends text message to investor Cheryl Williams that "Money left Zurich at central bank in Europe" and that proceeds would be distributed soon. |
| 5 | 9/17/09 | REED sends text message to investor Mike Alstott stating, "On phone now with [Degler]…Still waiting for it to clear the proper channels at bank bro..Good news is that it's there.." |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS 6-7
### (Money Laundering)

16. The Grand Jury incorporates into Count 6-7, specifically and by reference and as if stated therein, the allegations and assertions stated in paragraphs 1-14.

On or about the dates listed below, in the Western District of Michigan, Southern Division, and elsewhere,

FREEMAN CARL REED,
a/k/a "Buck,"

did knowingly engage in monetary transactions by, through, and to financial institutions, affecting interstate commerce, in criminally-derived property of a value greater than $10,000, said property having been derived from specified unlawful activity, namely, wire fraud:

| Count | Date | Transaction |
|---|---|---|
| 6 | 8/20/08 to 2/9/09 | REED transfers approximately $79,349 of investor funds to French Brothers Construction for the installation of a large rear deck, new river deck and a hot tub deck at his home in St. Joseph, Michigan. |
| 7 | 5/11/09 to 4/7/10 | REED transfers $15,500 of investor funds to Mile High Ski Doo for the purchase of two new snowmobiles. |

18 U.S.C. § 1957

6

## COUNT 8
**(Failure to File Tax Return)**

During the calendar year 2007, in the Southern Division of the Western District of Michigan,

FREEMAN CARL REED,
a/k/a "Buck,"

who was a resident of St. Joseph, Michigan, did receive gross income of $351,989 and, by reason of such gross income, was required by law, following the close of the calendar year 2007 and on or before April 15, 2008, to make an income tax return to the Internal Revenue Service Center at Kansas City, Missouri, to a person assigned to receive returns at the local office of the Internal Revenue Service at Kansas City, Missouri, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled, and knowing and believing all of the foregoing, Defendant did willfully fail, on or about April 15, 2008, to make an income tax return.

26 U.S.C. § 7203

## COUNT 9
**(Failure to File Tax Return)**

During the calendar year 2008, in the Southern Division of the Western District of Michigan,

FREEMAN CARL REED,
a/k/a "Buck,"

who was a resident of St. Joseph, Michigan, did receive gross income of $471,345 and, by reason of such gross income, was required by law, following the close of the calendar year 2008 and on or before April 15, 2009, to make an income tax return to the Internal Revenue Service Center at Kansas City, Missouri, to a person assigned to receive returns at the local office of the Internal Revenue Service at Kansas City, Missouri, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled, and knowing and believing all of the foregoing, Defendant did willfully fail, on or about April 15, 2009, to make an income tax return.

26 U.S.C. § 7203

## COUNT 10
**(Failure to File Tax Return)**

During the calendar year 2009, in the Southern Division of the Western District of Michigan,

FREEMAN CARL REED,
a/k/a "Buck,"

who was a resident of St. Joseph, Michigan, did receive gross income of $883,832 and, by reason of such gross income, was required by law, following the close of the calendar year 2009 and on or before April 15, 2010, to make an income tax return to the Internal Revenue Service Center at Kansas City, Missouri, to a person assigned to receive returns at the local office of the Internal Revenue Service at Kansas City, Missouri, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled, and knowing and believing all of the foregoing, Defendant did willfully fail, on or about April 15, 2010, to make an income tax return.

26 U.S.C. § 7203

## FORFEITURE ALLEGATION
### (Wire Fraud)

The allegations contained in Counts 1–5 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of wire fraud in violation of Title 18, United States Code, Section 1343, as alleged in Counts 1-5 of the Indictment,

FREEMAN CARL REED,
a/k/a "Buck," and
GARY EDWARD DEGLER

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.  The property to be forfeited includes, but is not limited to, the following:

1. PERSONAL PROPERTY: One Brietling watch seized during execution of a search warrant of Freeman Reed's house.

2. MONEY JUDGMENT: A sum of money equal to at least $1,300,000, which represents the proceeds from the scheme to defraud alleged in Counts 1-5 of the Indictment.

3. SUBSTITUTE ASSETS:  If any of the property described above, as a result of any act or omission of the Defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
21 U.S.C. § 853(p)

A TRUE BILL

_____
GRAND JURY FOREPERSON

PATRICK A. MILES, JR.
United States Attorney

_____
MATTHEW G. BORGULA
Assistant United States Attorney

11